461 S.E.2d 25 (1995)
Jerry T. WILLIAMS, Petitioner-Appellant,
v.
DAVIE COUNTY, and Employment Security Commission of North Carolina, Respondents-Appellees.
No. COA94-901.
Court of Appeals of North Carolina.
September 5, 1995.
*26 Elliot, Pishko, Gelbin & Morgan, P.A. by Ellen R. Gelbin, Winston-Salem, for petitioner appellant.
Chief Counsel T.S. Whitaker and Thelma M. Hill, Raleigh, for respondent appellee Employment Sec. Com'n.
COZORT, Judge.
In this case the petitioner, a deputy sheriff of Davie County assigned to work with state and federal agencies on drug conspiracies, was fired for failing to inform the sheriff that he had discovered unauthorized wiretaps on phones in the sheriff's department. State and federal agents had instructed petitioner not to discuss the wiretaps with anyone in the sheriff's department. After his dismissal, petitioner filed for unemployment benefits. The Employment Security Commission denied petitioner's claim, ruling that petitioner's failure to disclose the discovered wiretaps to his superiors amounted to misconduct which made petitioner ineligible for benefits. The superior court affirmed. We hold the court erred in affirming the Commission's conclusion that petitioner's actions constituted misconduct disqualifying petitioner from benefits.
The essential facts are undisputed. Petitioner was a detective with fourteen years' experience in the Davie County Sheriff's Department. Part of his duties included working with Internal Revenue Service (I.R.S.) and State Bureau of Investigation (S.B.I.) agents, who used sheriff's department facilities to investigate drug conspiracies. For about three years the I.R.S. and S.B.I. conducted an investigation of a drug conspiracy involving several people in Davie County. During this investigation, an informant implicated petitioner's supervisor, Lt. John Stephens, in the petitioner's presence. One of the lead federal agents conducting the investigation, I.R.S. Special Agent Ted Warren, told petitioner not to disclose this information.
On 2 March 1993 petitioner and another sheriff's detective, Arthur Ebright, found a recording device on Lt. Stephens' telephone which they suspected might be illegally recording third-party telephone conversations. Ebright testified he and petitioner entered Lt. Stephens' office that night because they thought the people who cleaned the office had left it open, and the officers wanted to *27 secure the office and lock the door. Ebright stated the two saw the tape recorder under a table near Lt. Stephens' desk, between one of the table's cross braces and the floor. Ebright and petitioner told federal agents about the recorder the next night. Ebright testified he unlocked the door to Stephens' office and went in the office with Sgt. Tommy Grubb of the sheriff's department, federal agents, and the petitioner. The recorder was still underneath the desk and was hooked to three phone lines. Sgt. Grubb opened Stephens' middle desk drawer and removed a tape. The officers listened to the tape and determined it was a recording of third-party conversations.
S.B.I. Special Agent Robert Risen testified that petitioner played the tapes for him in petitioner's car, and that a call Risen made to the Forsyth County Sheriff's Department was recorded on the tape. Risen testified petitioner told him petitioner could not tell the sheriff about the recorder because the sheriff would not do anything about it. Risen told petitioner he was going to talk to I.R.S. Special Agent Warren that afternoon. Special Agent Warren testified he thought it was possible some of the recorded conversations were linked to the investigation he was conducting. Warren testified the sheriff's officers and the federal investigators talked about what to do after discovering the recorder and tapes, but that no one was sure what should be done or who should be told about the phone tap. After talking to Warren, Risen wrote a memo to the special agent in charge of the S.B.I.'s Hickory office, who contacted the S.B.I.'s assistant director, who contacted the Federal Bureau of Investigation (F.B.I.). In a written discharge report filed with the Employment Security Commission petitioner stated that he received a telephone call on 6 March 1993 from an agent who told him not to take any actions regarding the telephone recordings, since the issue was in the hands of the F.B.I. On 8 March, F.B.I. Agent Dennis Baker called petitioner and told him not to discuss the phone tap with anyone. On 9 March, the F.B.I. served a search warrant on Davie County Sheriff William Wooten and confiscated the tapes and recorder.
Sheriff Wooten testified he asked petitioner to resign. When petitioner refused, the sheriff fired him. The sheriff testified his reasons for firing petitioner included tensions between petitioner and his supervisor, petitioner's failure to follow the chain of command, and statements petitioner made to the media. In response to the Employment Security Commission's request for information, the Davie County Finance Office listed as reasons for separation: "Disloyalty to the Sheriff. Failing to keep the Sheriff informed of a clandestine investigation involving his supervisor. Illegal search of supervisor's office on two occasions, involving four other departments."
On 17 June 1993, petitioner applied to the Employment Security Commission for unemployment benefits. An adjudicator for the Commission determined petitioner was disqualified for benefits under N.C.Gen.Stat. § 96-14(2) because he was discharged for misconduct connected to his work. Petitioner appealed the ruling, and the parties presented arguments at a 22 July 1993 hearing. The appeals referee affirmed the adjudicator's decision, making the following pertinent findings of fact:
3. Claimant was discharged from this job for failing to follow departmental policy. The claimant discovered in his immediate superior's office a tape recorder that was being use [sic ] to wiretap phone conversations there at the sheriff's department. He was concerned as to whether or not this was legal. He discovered the wiretap by accident. He did tell another deputy about this. He also told an SBI agent. The SBI agent then notified an IRS agent. The claimant was aware the IRS agent had been notified.
4. The claimant never notified the sheriff or the chief deputy about the wiretap. He was aware that under the department's chain of command proper procedure would be to go to either of them with a complaint about his immediate superior. That policy was contained in the policy and procedures manual for the sheriff's department. The claimant was familiar with this.
5. The claimant never notified anyone in his chain of command. The department *28 only learned of the situation when a search warrant was served on it by the FBI. This occurred some nine days after the initial discovery of the wiretap.
The appeals referee concluded that petitioner's failure to notify the proper authorities within his chain of command of the discovery of the phone tap was a violation of departmental policy, amounting to misconduct. Petitioner appealed, and Deputy Commissioner James Haney affirmed the appeals referee's decision. Petitioner petitioned for judicial review of the Commission's decision in Davie County Superior Court. Judge F. Fetzer Mills affirmed the Commission's decision. Petitioner appealed to this Court.
The standard of review for a decision by the Employment Security Commission is whether (1) the evidence before the Commission supports its findings of fact and (2) the facts found by the Commission sustain its conclusions of law. Reco Transportation, Inc. v. Employment Security Comm., 81 N.C.App. 415, 418, 344 S.E.2d 294, 296, disc. review denied, 318 N.C. 509, 349 S.E.2d 865 (1986).
Petitioner contends the Commission's conclusion that he is ineligible for unemployment compensation under N.C.Gen.Stat. § 96-14(2) because his actions constituted misconduct is unsupported by the Commission's findings of fact or the evidence. We agree.
Ordinarily a claimant is presumed to be entitled to benefits under the Unemployment Compensation Act. In re Miller v. Guilford County Schools, 62 N.C.App. 729, 731, 303 S.E.2d 411, 412, disc. review denied, 309 N.C. 321, 307 S.E.2d 165 (1983). The employer bears the burden of rebutting this presumption by showing circumstances which disqualify the claimant. Id.
N.C.Gen.Stat. § 96-14(2) (1993) provides an employee shall be disqualified for unemployment benefits if the Commission determines he was discharged for misconduct connected with his work. The statute defines misconduct as:
conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee....
Id.
Violating a work rule is not willful misconduct if evidence shows the employee's actions were reasonable and were taken with good cause. Intercraft Industries Corp. v. Morrison, 305 N.C. 373, 375, 289 S.E.2d 357, 359 (1982). "Good cause [is] a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." Id. at 376, 289 S.E.2d at 359. If the discharged employee acts in a way which shows a wanton or willful disregard for the employer's interest, deliberately violates the employer's rules or displays wrongful intent, he is not entitled to unemployment compensation. Id. at 375, 289 S.E.2d at 359.
A federal investigator had given petitioner specific instructions not to discuss information about an ongoing drug investigation which may involve his supervisor. The same investigator, I.R.S. Special Agent Ted Warren, testified he thought conversations recorded by petitioner's supervisor might be linked to this investigation. Petitioner stated that after talking to S.B.I. Agent Risen on Thursday, 4 March 1993, he decided to wait until the following Monday to decide whether to tell the sheriff what he had discovered. That Monday morning, an F.B.I. agent called petitioner at home and instructed him not to discuss the phone tap with anyone.
Petitioner's failure to inform the sheriff or chief deputy of the phone tap in Lt. Stephens' office was a violation of departmental policy, as found by the Commission. We hold that this violation does not rise to the level of misconduct. This evidence, and the Commission's findings, fail to support a conclusion that petitioner's conduct showed a wanton or willful disregard of his employer's interests. Rather, we find, given the unusual circumstances here, including the instructions petitioner received from state and federal agents, that petitioner's failure to report to the sheriff the phone tap he had discovered was a reasonable response to the dilemma petitioner faced.
*29 In coming to this conclusion, we recognize the sheriff's right to remove petitioner from his department and do not purport to limit that right in this opinion. However, the sheriff's right to fire the petitioner does not bear on petitioner's right to receive unemployment benefits.
The purpose of denying a discharged employee unemployment benefits because of misconduct connected with work is to prevent these benefits from going to employees who lose their jobs because of "callous, wanton and deliberate misbehavior." Intercraft, 305 N.C. at 375, 289 S.E.2d at 359. The evidence before the Commission and its findings of fact do not support its conclusion that petitioner's behavior was of this nature. We find petitioner's actions did not constitute misconduct.
The trial court's judgment affirming the Commission's decision is reversed. The matter is remanded to the Superior Court of Davie County for remand to the Employment Security Commission for entry of an award of unemployment benefits.
Reversed and remanded.
JOHN and WALKER, JJ., concur.