BAGWELL & BAGWELL, INCORPORATED, Petitioner-Appellant v. PATRICIA C. BLANTON and EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondent-Appellees

No. COA95-1393

(Filed 19 November 1996)

**Labor and Employment § 173 (NCI4th)— unemployment benefits—findings of Employment Security Commission— conflicting**

An appeal to the Court of Appeals of a Superior Court judgment affirming a decision by the Employment Security Commission was remanded to the Commission where the findings of the Commission were in conflict and thus could not support its conclusion.

**Am Jur 2d, Unemployment Compensation §§ 43, 215.**

Appeal by petitioner from judgment filed 22 March 1995 in Wake County Superior Court by Judge Wiley F. Bowen. Heard in the Court of Appeals 18 September 1996.

*Randolph L. Worth for petitioner-appellant.*

*Chief Counsel Thomas S. Whitaker, by Thelma M. Hill, for respondent-appellees.*

Greene, Judge.

Bagwell and Bagwell Inc. (employer) appeals from a judgment of the superior court affirming a decision of the Employment Security Commission of North Carolina (the Commission) which determined that Patricia C. Blanton (employee) was "not disqualified for unemployment benefits."

BAGWELL & BAGWELL, INC. v. BLANTON

[124 N.C. App. 538 (1996)]

The appeal from the superior court to this Court requires that we review the order of the Commission "in the same manner as the superior court must review that order." *Housecalls Nursing Servs. v. Lynch,* 118 N.C. App. 275, 278, 454 S.E.2d 836, 838 (1995). Thus, we accept as conclusive the findings of fact made by the Commission "if there is any competent evidence to support them." *Id.*

The Commission made the following pertinent findings of fact:

3. *The [employee] was discharged from this job for insubordination.*

4. The [employee] was hired on September 20, 1993. The [employee] was given a starting salary of $20,000.00. She was promised a review and possible raise in six and twelve months.

5. The [employee] gave the secretary/treasurer a letter on May 17, 1994 that requested a $5,000.00 a year raise. She presented the employer with the letter because she had been working for eight months and had not received an evaluation. The employer did not understand the content of the letter and asked if it was a letter of resignation, if the raise request was not granted. The [employee] said that it was not a resignation letter. The employer informed her that she was not going to receive a raise and considered it a resignation letter. *The employer then informed her that she was terminated.* The [employee] asked the employer to reconsider, became excited and began crying. The employer asked her to leave the premises or he would call the police and have her removed from the premises.

6. The [employee] left the office and slammed the door on her way out. The [employee] then began cleaning out her desk. The employer watched as she was cleaning out the desk. . . . The [employee] left the premises. The employer asked for her office key as she was leaving, but she did not have it with her.

7. The [employee's] husband met her in the parking lot. The husband talked to the employer about the circumstances surrounding his wife's discharge. *The employer said she had not been discharged but had been sent home with pay for the day.* The parties then left. The [employee] informed the employer that she was planning to sue him as a result of the discharge.

8. On May 18, 1994, the employer's attorney informed the [employee], once again, that she had been discharged. *The [employee] had not been insubordinate to the employer prior to the discharge.*

(Emphases added.)

The Commission then concluded that the employee was not "discharged from the job for substantial fault or misconduct connected with the work."

The evidence before the Commission is conflicting as to when the employee was actually discharged. There is no dispute that she was officially notified by the employer's attorney on 18 May 1994 that she "had been discharged." The employer's evidence could support a finding that the employee was discharged for insubordinate behavior occurring on 17 May 1994. The employee's evidence could support a finding that the employee was discharged because she asked for a raise and that any insubordination occurred only after she was notified that she had been "terminated." The evidence is not in conflict that on 17 May 1994 after being told by the employer that she "was not going to receive a raise," that she "became excited and began crying." She "left the office [of the employer] and slammed the door on her way out." As the employer watched her clean out her desk "she told him to leave her damn office or she would throw something at him."

---

The issue is whether the Commission resolved the conflict in the evidence with regard to the time of the employee's discharge.

There is a presumption that an employee is entitled to benefits under the Unemployment Compensation Act. *In re Miller v. Guilford County Schools*, 62 N.C. App. 729, 731, 303 S.E.2d 411, 412, *disc. rev. denied*, 309 N.C. 321, 307 S.E.2d 165 (1983). "The employer bears the burden of rebutting this presumption by showing circumstances which disqualify the [employee]." *Williams v. Davie County*, 120 N.C. App. 160, 164, 461 S.E.2d 25, 28 (1995). Section 96-14 enumerates a number of instances when an employee will be disqualified. One such disqualifying circumstance is "because [the employee] was discharged for misconduct connected with his work." Section 96-14(2) defines "misconduct" as:

conduct evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to

BAGWELL & BAGWELL, INC. v. BLANTON

[124 N.C. App. 538 (1996)]

expect of his employee . . . or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

N.C.G.S. § 96-14(2) (1995).

In this case the parties dispute whether the employee's conduct constitutes misconduct, and if so, whether the misconduct was the cause of the discharge. It was the responsibility of the Commission to resolve these disputes and our review of the record indicates that it failed in its duty.

The Commission appears to assume that the employee's conduct constitutes misconduct and then determines that because this conduct occurred after she was discharged, it did not disqualify her from benefits. The problem with this approach, however, is that the findings of the Commission are in conflict as to when the discharge actually occurred and thus cannot support its conclusion. In finding of fact number 3, the Commission finds that the employee "was discharged from [her] job for insubordination." Finding of fact number 8, on the other hand, states that she "had not been insubordinate . . . prior to the discharge." Finding of fact number 5 states that on 17 May 1994 she was told that "she was terminated." On the other hand, finding of fact number 7 states that "she had not been discharged but had been sent home with pay."

Because the Commission has failed in its duty to resolve the conflict in the evidence, we are required to remand this matter to the Commission. On remand, if the Commission resolves the conflict and determines that conduct (alleged to constitute misconduct) occurred after the discharge, the employee will not be disqualified from benefits. If, however, the Commission determines that the conduct occurred prior to the discharge, the Commission must then determine whether the conduct constitutes misconduct within the meaning of section 96-14(2) and further whether the discharge was caused by that misconduct.

Remanded.

Chief Judge ARNOLD and Judge JOHNSON concur.