HUNTER, Judge.
 

 William M. Wilder ("petitioner") appeals from an order of the superior court affirming a denial entered 27 April 2004 by the Employment Security Commission of North Carolina ("ESC") of Trade Adjustment Assistance ("TAA") benefits. As the findings of fact support the conclusion that petitioner's requested training was not suitable, we affirm the superior court's order.
 

 Petitioner was employed by Lucent Technology for approximately twenty years in the telecommunications industry. Petitioner had a degree in electrical engineering from the United States Naval Academy and a master's degree in computer science from California Polytechnical State University. Petitioner was laid off while employed by Lucent at their Research Triangle Park location, due to that facility's closure. Petitioner was re-employed by Lucent in Massachusetts for approximately one year, but was again laid off.
 

 Petitioner returned to Greensboro and applied for TAA benefits as an adversely affected worker under the Trade Act of 1974. Petitioner sought retraining in the form of a
 
 *865
 
 second master's degree in mathematics from the University of North Carolina at Greensboro. The ESC Appeals Referee found that "suitable employment [was] available to the claimant" and that "a second masters degree was not considered to be suitable for the intent of this program." Petitioner's request was denied.
 

 Petitioner appealed the decision to the full ESC, which entered a final decision affirming the Referee's order. Petitioner then appealed to the superior court. The superior court, after review of the record, found that the order's findings of fact were based upon competent evidence and that the findings properly supported the conclusions of law. The superior court affirmed the decision in its entirety and petitioner appeals from that judgment.
 

 I.
 

 Petitioner first contends the ESC erred in disregarding the federal statutory and regulatory requirement that suitable employment must be for a minimum of eighty percent (80%) of former wages. We agree.
 

 We first address the appropriate standard for review of a decision by the ESC. "The standard of review for a decision by the Employment Security Commission is whether (1) the evidence before the Commission supports its findings of fact and (2) the facts found by the Commission sustain its conclusions of law."
 
 Williams v. Davie County,
 

 120 N.C.App. 160
 
 , 164,
 
 461 S.E.2d 25
 
 , 28 (1995).
 

 19 U.S.C. § 2296
 
 (2004) provides for training of workers in industries that have been adversely affected by import competition.
 

 Id.
 

 Regulations governing the program state that the administering State agency "shall" approve training for an adversely affected worker when six criteria are established. Approval of Training,
 
 20 C.F.R. § 617.22
 
 (2004). The first criterion is a finding that "there is no suitable employment (which may include technical and professional employment) available for an adversely affected worker[.]"
 
 19 U.S.C. § 2296
 
 (a)(1)(A). The corresponding regulation states that a determination of suitable employment means "work of a substantially equal or higher skill level than the worker's past adversely affected employment, and wages for such work at not less than 80 percent of the worker's average weekly wage" which is available "either in the commuting area . . . or outside the commuting area in an area in which the worker desires to relocate with the assistance of a relocation allowance[.]"
 
 20 C.F.R. § 617.22
 
 (a)(1)(i).
 

 Here, the ESC found that petitioner was referred to two potential jobs in electrical engineering paying between $45,000.00 and $50,000.00 per year, and one computer programming job paying in excess of $50,000.00 per year. The ESC also found that petitioner had earned between $80,000.00 and $100,000.00 in his final year of employment at Lucent. The ESC concluded that suitable employment was available to petitioner. However, the findings regarding available jobs made by the ESC do not provide salaries equaling eighty percent (80%) of petitioner's average weekly wage at his prior job, as the ESC concedes in its argument to this Court. As
 
 20 C.F.R. § 617.22
 
 (a)(1)(i) specifically defines suitable employment as "work of substantially equal or higher skill level . . . [paying] wages . . . not less than 80 percent of the worker's average weekly wage[,]" the ESC's findings do not supports its conclusion of law that suitable employment was available to petitioner.
 

 As we find the ESC erred in its conclusion of law that suitable employment existed, we do not address petitioner's second assignment of error that the ESC erred in its findings as to why petitioner failed to pursue the available suitable employment. As petitioner must establish all six of the required criteria for an award of benefits, however,
 
 see
 

 20 C.F.R. § 617.22
 
 , we now address petitioner's challenge of the ESC's conclusion as to the sixth criteria.
 

 II.
 

 Petitioner next contends the ESC erred in finding that a second master's degree was not suitable for the intent of the program. We disagree.
 

 *866
 

 19 U.S.C. § 2296
 
 (a)(1)(F) states as its final criterion for approval of training for an adversely affected worker that "such training is suitable for the worker and available at a reasonable cost[.]"
 

 Id.
 

 20 C.F.R. § 617.22
 
 (a)(6) provides additional guidelines for these requirements.
 
 20 C.F.R. § 617.22
 
 (a)(6)(i) states that training is suitable for a worker when "appropriate . . . given the worker's capabilities, background and experience."
 

 Id.
 

 Our Courts have not previously addressed this statute and accompanying regulations and we look to jurisprudence from our sister states for guidance. In
 
 Marshall v. Com'r of Jobs & Training,
 

 496 N.W.2d 841
 
 , 843 (1993), the Minnesota Court of Appeals considered the issue of suitability of training for workers who already possessed advanced degrees.
 
 Marshall
 
 stated:
 

 This statute was designed to give workers whose job functions have virtually disappeared because of foreign competition an opportunity to become proficient in a new trade. Although professional training is allowed under the statute . . . the statute is not meant to allow a person with a professional degree who has reasonable job prospects or options the opportunity to acquire a second professional degree simply to enhance employability. Thus, the applicant wanting to enhance an already existing professional degree bears a heavy burden to demonstrate that such training is reasonable and necessary.
 

 Id.
 

 Further, we note the United States Department of Labor has addressed the issue of suitability and reasonable cost of training, stating:
 

 The 1988 Amendments clearly provide that State administering agencies shall approve training for individual workers at the lowest reasonable cost which will lead to employment and will result in training opportunities for the largest number of adversely affected workers. This means that State administering agencies should avoid approving training for occupations that require an extraordinarily high skill level relative to the worker's current skills level and for which total costs of training, including transportation and subsistence, are excessively high.
 

 Trade Adjustment Assistance for Workers; Amendment of Regulations, 59 Fed.Reg. 906, 924 (Jan. 6, 1994) (to be codified at 20 C.F.R. pt. 617). We note that our Supreme Court has recognized that "`[i]t is well established "that an agency's construction of its own regulations is entitled to substantial deference."'"
 
 Morrell v. Flaherty,
 

 338 N.C. 230
 
 , 237,
 
 449 S.E.2d 175
 
 , 179-80 (1994) (citations omitted).
 

 After careful review of the governing statute and regulations, we agree that, in light of the goal of providing training opportunities for the largest number of adversely affected workers at the lowest reasonable cost, an individual who already possesses a marketable professional degree bears a heavy burden to establish that an additional professional degree is suitable. We therefore conclude that the ESC may, after application of the governing criteria, determine that a second professional degree is not suitable training for an individual.
 

 Here, the ESC found that petitioner had a bachelor of science degree in electrical engineering from the United States Naval Academy and a master's degree in computer science from California Polytechnical State University, which the ESC characterized as a "marketable master[']s degree." Further, the ESC found that petitioner had twenty-one years of experience in the telecommunications field. Based on these findings, the ESC concluded that a second master's degree in mathematics for petitioner was not suitable for the intent of the program.
 

 As the ESC made sufficient findings that petitioner had both a marketable advanced degree and significant industry experience, we find the ESC did not err in concluding a second master's degree in mathematics was not suitable given the worker's capabilities, background, and experience. As approval of TAA training benefits under
 
 19 U.S.C. § 2296
 
 requires a finding of suitability of training, we hold the superior court properly affirmed the ESC's denial of petitioner's application for benefits.
 

 *867
 
 Affirmed.
 

 Judges HUDSON and GEER concur.