RANDOLPH M. JAMES, P.C., Petitioner v. BETTY W. LEMMONS and EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Respondents

No. COA05-1219

(Filed 16 May 2006)

1. Unemployment Compensation— insurance benefits—misstatement in finding of fact

The trial court did not err in an unemployment insurance benefits case by allegedly rewriting or editing an appeals referee's finding of fact in violation of N.C.G.S. § 96-15(i), because: (1) the trial judge did not find additional or different facts, but simply corrected a misstatement of the word "all" by the appeals referee; and (2) the misstatement was of no consequence to the ultimate determination that claimant's discharge from employment was not due to substantial fault or misconduct in connection with the work.

JAMES v. LEMMONS

[177 N.C. App. 509 (2006)]

**2. Unemployment Compensation— insurance benefits—sufficiency of findings of fact**

The trial court did not err in an unemployment insurance benefits case by finding there was competent evidence to support the Employment Security Commission's findings that claimant's absenteeism from work was due to her medical condition, because: (1) contrary to petitioner employer's assertion, N.C.G.S. § 96-14(1) does not apply to a case where claimant's employment was terminated by employer, and instead N.C.G.S. § 96-14(2) applies; (2) there is no statutory requirement for medical testimony to support a medical basis for work absences, and a claimant's testimony has been held to be sufficient evidence; and (3) while the evidence supporting the appeals referee's findings is very sparse, it is still competent evidence.

**3. Unemployment Compensation— insurance benefits—misconduct—excessive absenteeism—substantial fault—reasonable control**

The trial court did not err by concluding that respondent former employee was not disqualified from receiving unemployment insurance benefits even though petitioner employer contends claimant's excessive absenteeism constituted misconduct as a matter of law under N.C.G.S. § 96-14(2) or rose to the level of substantial fault, because: (1) the employee's violation of a work rule will not rise to the level of misconduct if the evidence shows that the employee's actions were reasonable and were taken with good cause; (2) claimant had a long history of emotional and behavioral disorders for which she took prescription medication and was under a doctor's care; (3) claimant's absences from work were due to her medical condition, and while she did not give her employer intimate details about her medical condition, she did provide a doctor's excuses for the time she missed from work; and (4) claimant's actions do not qualify as substantial fault as a matter of law when an employee does not have reasonable control over failing to attend work based on serious physical or mental illness, and claimant's reasons regarding her decision to stop taking her medications was a credibility determination left for the Employment Security Commission instead of the Court of Appeals.

Appeal by petitioner from judgment entered 15 June 2005 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 29 March 2006.

*Randolph M. James, P.C., by Randolph M. James for Petitioner-Appellant.*

*Betty W. Lemmons, Respondent-Appellee, no brief filed.*

*Camilla F. McClain for Respondent-Appellee Employment Security Commission of North Carolina.*

STEPHENS, Judge.

Petitioner-Appellant, Randolph M. James, P.C. ("Employer"), appeals from judgment of Forsyth County Superior Court holding that a former employee, Betty Lemmons ("Claimant"), was not disqualified from receiving unemployment insurance benefits. For the reasons which follow, we affirm the judgment below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Claimant began working for Employer on 6 November 2000 and continued working as a receptionist until the week of 12 April 2004, when Employer terminated her employment for excessive absenteeism.

Throughout her employment, Claimant's attendance record was poor. She missed work for illnesses and occasionally left to attend medical appointments. Over the course of her employment, Claimant's absenteeism grew from missing small blocks of time, to missing entire days, to missing several days in a row. When she would return to work with notes from her physicians, the notes would often include vague diagnoses, such as anxiety or malaise. Throughout her employment, these medical conditions had a negative impact on Claimant's ability to complete her job responsibilities.

Most of the time that Claimant missed from work was stress related. As early as July 2000, she experienced anxiety and occasional panic attacks. In fact, Claimant may have had this condition for most of her adult life. Due to her condition, her doctor suggested that she see a psychologist. Although Claimant visited a psychiatrist in an effort to get her condition under control, the evidence is not clear that she actually took all the medications prescribed for her condition. Claimant admitted that she did not take a medication for bipolar disorder that had been prescribed for her.

In Employer's office were notices explaining the holiday, vacation and sick time policy, as well as the procedure to make up missed time. Although Claimant was a salaried employee, when she failed to

work a forty-hour week, her checks were adjusted according to her hourly pay rate. The office manager would discuss the amount of vacation and sick time Claimant had remaining and would adjust her records based on any additional or make-up hours that Claimant worked. Regardless of the amount of time that Claimant missed from work, Employer continued to pay for Claimant's health insurance, dental insurance, disability policy and life insurance.

In addition to the attendance issues, Claimant had a history of poor working relationships with co-workers. In particular, she had a strained relationship with Ms. Daves-Brown, one of the firm's paralegals. When Ms. Daves-Brown attempted to discuss the relationship with Claimant, Claimant became defensive and difficult to talk to. Additionally, when they worked closely together, Claimant would become frustrated, angry and upset with Ms. Daves-Brown if she perceived that Ms. Daves-Brown was being rude to her. During the week of 12 April 2004, after Employer could no longer tolerate Claimant's absences, Employer terminated the employment relationship.

Claimant thereupon filed a claim with the Employment Security Commission for unemployment benefits effective 25 April 2004. The Adjudicator issued a decision holding that Claimant was not disqualified for benefits, thereby entitling her to a weekly benefit of $219.00 up to a maximum benefit amount of $5,694.00. Employer appealed, and the matter was thereafter heard before Appeals Referee James C. Lee on 24 September 2004. Present and testifying at the hearing were Claimant, and Employer witnesses Randolph M. James, Sue James, and Suzanne Daves-Brown.

On 13 October 2004, Mr. Lee filed his decision concluding that the evidence failed to show that Claimant was discharged from her job for substantial fault or misconduct connected with the work. He thus held that she was not disqualified for benefits. Employer appealed to the Full Commission of the Employment Security Commission which considered the matter upon the record compiled before the appeals referee. On 9 December 2004, Commission Chairman Harry E. Payne, Jr. filed the Commission's Decision finding, *inter alia*, that (1) there was a reasonable basis for the credibility determinations of the appeals referee, and (2) the evidence relied upon for those credibility determinations was not inherently incredible. The Commission concluded that the facts found by the appeals referee were supported by competent and credible evidence of record, and adopted them as its own. It affirmed the decision of the appeals referee and held that Claimant was not disqualified for unemployment insurance benefits.

Employer then filed a Petition for Judicial Review, and the matter came on for hearing before the Honorable Ronald E. Spivey at the 25 May 2005 civil session of Forsyth County Superior Court. On consideration of the record on appeal and arguments of the parties, Judge Spivey found that, although "very sparse," there was competent evidence of record to support the Commission's findings, and that those findings sustained the Commission's conclusion that Claimant was not discharged for substantial fault or misconduct connected with the work. He thus affirmed the Commission's decision that Claimant is not disqualified from receiving unemployment insurance benefits. From Judge Spivey's entry of Judgment in favor of Claimant on 15 June 2005, Employer appealed.

## II. STANDARD OF REVIEW

North Carolina General Statute 96-15(i) governs the applicable standard of review in appeals of this type. The statute provides in relevant part that "[i]n any judicial proceeding under this section, the findings of fact by the Commission, if there is any competent evidence to support them and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." N.C. Gen. Stat. § 96-15(i) (2005). Thus, findings of fact in an appeal from a decision of the Employment Security Commission are conclusive on both the superior court and this Court if supported by any competent evidence. *Celis v. N.C. Employment Sec. Comm'n*, 97 N.C. App. 636, 389 S.E.2d 434 (1990).

## III. QUESTIONS PRESENTED

[1] In the first assignment of error, Employer contends that the superior court impermissibly rewrote and/or edited the appeals referee's finding of fact number 9.

Finding of fact 9, as found by the appeals referee, states: "The time that the claimant missed from work was disruptive to the employer's business however all the time that claimant missed from work was attributable to claimant's medical condition."

On appeal to the superior court, Judge Spivey determined that:

The Court finds that the Commission's use of the word "all" when the claimant had also been absent due to snow, holidays or late due to a traffic accident was not a fatal error, and the medical evidence regarding the time that the claimant missed from work due to her medical condition was sufficient.

Employer contends that in making this determination, Judge Spivey violated N.C. Gen. Stat. § 96-15(i). In particular, Employer argues that in finding that the use of the word "all" was not a "fatal error," Judge Spivey essentially rewrote the finding of fact, and thereby committed error by engaging in his own fact-finding. We disagree.

Employer is correct that, as the statute plainly states, judicial fact-finding is prohibited on review of a Commission decision. We believe, however, that Judge Spivey did not find additional or different facts; he simply corrected a misstatement of the appeals referee. In *Guilford Cty. v. Holmes*, 102 N.C. App. 103, 105-06, 401 S.E.2d 135, 137 (1991), this Court determined that the use of the word "only" in a finding of fact by the Employment Security Commission was erroneous, but amounted to no more than a "misstatement," and therefore, was not "of any consequence."[1] Under this holding, the correction of misstatements is not necessarily "fact-finding" and may be performed upon judicial review without violating the statute's prohibition.

In the current case, the fact, as found by the appeals referee, mistakenly used the word "all." The referee found that "all" of Claimant's time off work was due to a medical condition, but the evidence does not support this finding. In addition to missing work for medical reasons, Claimant missed work due to snow, vacation, and an automobile accident on her way to work. Applying the rationale of *Guilford Cty. v. Holmes*, we hold that the finding of fact contained a mere misstatement of no consequence to the ultimate determination that Claimant's discharge from employment with Employer was not due to substantial fault or misconduct in connection with the work. Accordingly, we find no error in Judge Spivey's determination on this issue, and Employer's assignment of error is overruled.

[2] By the second assignment of error, Employer argues that there was no competent evidence to support the Commission's findings of fact 7, 8, and 9. Those findings are as follows:

---

1. The Commission found that the claimant personally delivered telephone messages "only" when the message was an emergency, when in fact she admitted to also personally delivering messages when she felt the message was important or if the call sounded urgent to her. At issue was whether the time away from her work station which resulted from her decision to personally deliver phone messages constituted misconduct or substantial fault. In reaching its decision to affirm the Employment Security Commission's determination that the claimant's actions did not rise to the level of misconduct or substantial fault, this Court found the "misstatement" regarding the claimant's personal delivery of phone messages to be of no consequence. *Guilford Cty.*, 102 N.C. App. at 105-06, 401 S.E.2d at 137.

7. The claimant did not respond well to criticism. When chastised, the claimant would often leave work. On occasion claimant would remain away from work for an extended period of time after being chastised. Claimant's conduct was due to her medical condition. Although the claimant did not provide intimate details about her medical condition she did provide a doctor's excuse for the time she missed from work.

8. The claimant was also defensive when approached by her supervisor and by coworkers concerning relatively minor and mundane matters. Despite the defensiveness the claimant would do as she was told. The claimant's initial reactions to encounters was also a manifestation of her medical conditions.

9. The time that the claimant missed from work was disruptive to the employer's business however all the time that claimant missed from work was attributable to claimant's medical condition.

Noting that no medical witnesses testified at the hearing before the appeals referee, Employer contends that there is no evidence from Claimant or in her medical records, which were offered and received as documentary evidence at the hearing, to support the "medical conclusory inference" that Claimant's excessive absenteeism "was due to, a manifestation of, or attributed to [her] medical condition[s]."

To support this argument, Employer relies on the requirements established by the General Assembly in N.C. Gen. Stat. § 96-14(1), which provides in relevant part that:

Where an individual leaves work due solely to a disability incurred or other health condition, whether or not related to the work, he shall not be disqualified for benefits if the individual shows:

a. That, at the time of leaving, an adequate disability or health condition of the employee, . . . either medically diagnosed or otherwise shown by competent evidence, existed to justify the leaving and prevented the employee from doing other alternative work offered by the employer[.]

N.C. Gen. Stat. § 96-14(1) (2005). Employer's rationale is flawed in two respects. First, this statutory provision plainly applies to cases in which an employee terminates the employment relationship and then seeks unemployment benefits. In the case at bar, Claimant's employ-

ment was terminated by Employer. Therefore, the controlling statute is N.C. Gen. Stat. § 96-14(2), which is discussed below.

Second, there is no statutory requirement for medical testimony to support an award of unemployment insurance benefits. Moreover, to support a medical basis for work absences, this Court has treated a claimant's testimony as sufficient. *See Hoke v. Brinlaw Mfg. Co.*, 73 N.C. App. 553, 327 S.E.2d 254 (1985); *Milliken & Co. v. Griffin*, 65 N.C. App. 492, 309 S.E.2d 733 (1983), *disc. review denied*, 311 N.C. 402, 319 S.E.2d 272 (1984).[2]

In the case at bar, the evidence provided by Claimant's testimony and medical records is at least minimally sufficient to establish that Claimant missed work for medical reasons. Indeed, Mr. James acknowledged in his testimony that Claimant's medical records revealed that when Claimant "can't cope, . . . her reaction is to get very upset and she sets off, what the doctor's [sic] describe as a histrionic reaction . . . resulting in heart palpitations, racing heart beat, which prompts her to run off to the doctors to get some sort of treatment." Further, the medical records which Mr. James subpoenaed to the hearing and offered in evidence establish that Claimant was being treated for depression, anxiety, problems sleeping, loss of energy, problems concentrating, and difficulty functioning at work. Additionally, Claimant provided notes from her physicians which indicated the date on which she came under their care and the date on which she was released to return to work. More importantly, the medical records show that Claimant was seeking treatment for the conditions which were causing her problems at work. The absenteeism continued because the treatment had not adequately improved or alleviated her problems. While we agree with Judge Spivey that the evidence to support the appeals referee's findings is "very sparse," we also agree with him that it is competent. Thus, under N.C. Gen. Stat. § 96-15(i), we are bound by the Commission's findings, as was Judge Spivey. This assignment of error is likewise overruled.

[3] We next examine Employer's third and final assignment of error, by which Employer contends that the facts, as found by the Commission and appeals referee, entitle Employer to relief as a matter of law. Employer relies on two findings of fact in particular, as follows:

---

2. In *Milliken & Co. v. Griffin*, this Court found claimant's reading of a statement from her physician to be sufficient evidence to support her medical contention. The *Hoke* Court, citing *Milliken & Co.*, allowed a claimant to testify regarding her high blood pressure, dizziness, and fainting spells.

4. The claimant did miss an excessive amount of time from work. The claimant's attendance became more troublesome as she neared the end of her tenure with this employer.

. . . .

9. The time that the claimant missed from work was disruptive to the employer's business[.]

Citing *Intercraft Indus. Corp. v. Morrison*, 305 N.C. 373, 289 S.E.2d 357 (1982), Employer argues that these findings compel a conclusion that Claimant's excessive absenteeism constitutes misconduct as a matter of law under N.C. Gen. Stat. § 96-14(2). This statutory provision establishes the guidelines for evaluating whether an employee whose employment is terminated by her employer is disqualified for unemployment insurance benefits. The statute provides in pertinent part:

An individual shall be disqualified for benefits:

(2) For the duration of his unemployment . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work. Misconduct connected with the work is defined as conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. [or]

(2a) [I]f it is determined by the Commission that such individual is, at the time the claim is filed, unemployed because he was discharged for substantial fault on his part connected with his work not rising to the level of misconduct. Substantial fault is defined to include those acts or omissions of employees over which they exercised reasonable control and which violate reasonable requirements of the job but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment.

N.C. Gen. Stat. § 96-14(2)(2a) (2005). Employer contends that Claimant's excessive absenteeism over a period of nearly three years mandates the conclusion, as a matter of law under the statute, that Claimant was discharged for misconduct connected with her work. Alternatively, Employer argues that Claimant's excessive absenteeism rose to the level of substantial fault because Claimant had the ability to conform her behavior to Employer's reasonable attendance policy, and failing to do so, her discharge from the job was for substantial fault.

Our Supreme Court has determined that in order to disqualify an employee from receiving unemployment compensation under N.C. Gen. Stat. § 96-14(2), there must be "conduct which shows a wanton or wilful disregard for the employer's interest, a deliberate violation of the employer's rules, or a wrongful intent." *Intercraft*, 305 N.C. at 375, 289 S.E.2d at 359 (citations omitted). The Court explained further that, "in the face of warnings, *and without good cause*[,]" excessive absenteeism may constitute willful misconduct. *Id.* (Emphasis added). On the contrary, the employee's violation of a work rule will not rise to the level of misconduct "if the evidence shows that the employee's actions were reasonable and were taken with good cause." *Id.* (Citations omitted). "Good cause" is defined as a reason "which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." *Id.* at 376, 289 S.E.2d at 359 (citations omitted). Noting that each case must be decided on its own facts, the Court affirmed the decision of the Employment Security Commission that absence because of an inability to find child care constituted good cause. *Id.* at 377, 289 S.E.2d at 360.

Misconduct can be demonstrated by persistent absences, without excuse or notice, after the employee has been warned about absences by the employer. *Butler v. J.P. Stevens & Co., Inc.*, 60 N.C. App. 563, 299 S.E.2d 672, *disc. review denied*, 308 N.C. 191, 302 S.E.2d 242 (1983). When an employee is out due to illness and does not inform the employer, misconduct is established because the employee has an "obligation to the employer to mitigate any damages an illness may cause the enterprise by giving appropriate notice." *Id.* at 567, 299 S.E.2d at 675 (citation omitted). Misconduct was established in *Butler* because the employee did not notify his employer when he was out sick and because he provided untruthful information to the employer when asked for an explanation for his absence. *Id.* at 565-66, 299 S.E.2d at 674.

In the case at bar, the Commission found that Claimant had a long history of emotional and behavioral disorders for which she took prescription medication and was under a doctor's care. The Commission further found that Claimant's absences from work were due to her medical condition and that, while she did not give Employer intimate details about her medical condition, she did provide doctor's excuses for the time she missed from work. On these findings, which are supported by the evidence, albeit sparse, the Commission concluded that Claimant was not absent from work due to misconduct. We think these facts distinguish this case from *Butler*. We agree with Respondent that the evidence was sufficient to permit the Commission to determine that Claimant's absences were for good cause, and that she did give Employer appropriate notice regarding her absences, thereby defeating Employer's argument that Claimant's absenteeism constitutes misconduct as a matter of law.

Employer next argues that Claimant's absenteeism constitutes substantial fault and that the Commission should have found her to be disqualified for unemployment benefits on this basis. This Court has determined that when an employer establishes a reasonable job policy to which an employee fails to conform, despite the ability to do so, this constitutes substantial fault. *Lindsey v. Qualex, Inc.*, 103 N.C. App. 585, 406 S.E.2d 609, *disc. review denied*, 330 N.C. 196, 412 S.E.2d 57 (1991). The reasonableness of the policy will be determined by several factors, including

> (1) how early in the employee's tenure she receives notice of the policy; (2) the degree of departure from expected conduct which warrants either a demerit or other disciplinary action under the policy; (3) the degree to which the policy accommodates an employee's need to deal with the exigencies of everyday life; (4) the employee's ability to redeem herself or make amends for rule violations; (5) the amount of counseling the employer affords the employee concerning rule violations; and (6) the degree of notice or warning an employee has that rule violations may result in her discharge.

*Id.* at 590, 406 S.E.2d at 612. This determination should be made on a case by case basis and by evaluating the totality of the circumstances and the employee's role within the company. *Id.*

The actions of Claimant, as found by the Commission, do not qualify as substantial fault as a matter of law. For an employee's behavior to qualify as substantial fault, the employee first has to be

able to exercise "reasonable control" over the behavior complained of by the employer. N.C. Gen. Stat. § 96-14(2a) (2005). As recognized by the Court in *Lindsey*, an employee does not have reasonable control over failing to attend work because of serious physical or mental illness. It is troubling that Claimant did not fully comply with her physicians' efforts to treat her emotional and behavioral disorders. However, there is no evidence that Claimant was medically capable of compliance.[3] Given the emotional and behavioral nature of Claimant's condition, we cannot say, in the absence of evidence, that she was capable of exercising reasonable control over her behavior. Additionally, Claimant provided reasons for her decisions to stop taking her medications, and the credibility of her explanations was for the Commission, not this Court. Accordingly, since the evidence does not establish that Claimant could exercise "reasonable control" over her actions, her behavior cannot rise to the level of substantial fault. Therefore, Employer is not entitled to relief as a matter of law.

For the reasons stated, all of Employer's assignments of error are overruled and the superior court's judgment is affirmed.

AFFIRMED.

Judges McGEE and HUNTER concur.

---

3. In cases involving termination of employment, a claimant is presumed to be entitled to benefits and the burden is on the employer to rebut this presumption. *Williams v. Davie Cty.*, 120 N.C. App. 160, 461 S.E.2d 25 (1995).